IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT S.,[1]

    Plaintiff,

v.                                                             Case No. 21-cv-231-SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff argues that the Commissioner committed error when she denied Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, he asserts argues that the ALJ failed to consider how his treating rheumatologist's opinion differed from the medical expert's assessment of his fibromyalgia, that the ALJ failed to properly value observations by Plaintiff's treating clinicians, and that the ALJ failed to discuss his activities of daily living at Step Four. The Court does not find reversible error in any of these areas. As a result, the Court DENIES Plaintiff's Opposed Motion To Reverse And/Or Remand, Doc. 27, and affirms the decision below.[3]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 33, 34, 35. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

[3] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

      most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

    The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

    B.    <u>Standard of Review</u>

    This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

**ANALYSIS**

Plaintiff makes three arguments: that the ALJ fails to consider the opinion of his treating rheumatologist regarding his fibromyalgia, that the ALJ does not consider the importance of in-person physician observations in light of the telephonic hearing, and that the ALJ fails to consider Plaintiff's testimony regarding his daily activities in the context of his physical limitations. The Court considers each in turn.

**I.      Treating Rheumatologist's Opinion**

Plaintiff argues that the ALJ "never mentions" Dr. Azzouqah's rheumatological "opinion" and "never considers it." Doc. 27 at 20. He argues that the opinion should have been considered because Dr. Kwok, the medical expert, "is suspicious of Plaintiff's fibromyalgia diagnosis and disregards it when opining that Plaintiff's use of an assistive device is not medically necessary." *Id.* Because Dr. Kwok is an orthopedic specialist and admitted in his testimony that fibromyalgia is typically treated by rheumatologists or other specialists, Plaintiff argues that Dr. Azzouqah's findings cut against Dr. Kwok's conclusion and should have been considered as probative evidence that the ALJ rejected. Doc. 41 at 1-2. Defendant responds that Dr. Azzouqah's statements are not "opinions" as defined by 20 C.F.R. § 404.1513(a)(2), so the ALJ was not required to evaluate their persuasiveness. Doc. 31 at 5. Additionally, Defendant points out that the ALJ found Plaintiff's fibromyalgia to be a severe impairment, so regardless of whether Dr. Kwok relied on this diagnosis, the ALJ took it into consideration. *Id.* at 6.

As an initial matter, Defendant is correct that Dr. Azzouqah's written observations do not meet the definition of an "opinion" for social security purposes. 20 C.F.R. § 404.1513(a)(2) defines a medical opinion as

>    a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>       (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>       (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>       (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>       (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

Dr. Azzouqah did not make a statement about Plaintiff's impairments, restrictions, abilities or limitations; rather, his portion of the record is comprised of medical notes, diagnoses, and treatment plans. *See* AR 1331-40 (Exhibit 16F/2-11). A medical opinion is a provider's "judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). Doctor's notes are usually medical evidence, not medical opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ("The ALJ was not required to assign a weight to [the provider]'s narrative of statements relayed to him by [the claimant]."); *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012)[5] (not a medical opinion where the treatment notes contain reported symptoms, coping strategies, current medications, lethality and substance-abuse assessments, a list of strengths, the results of a mental status exam, diagnostic impressions and diagnoses, recommendations as to services needed, requests for new medication, a psychiatric, medical, and substance-abuse history and education and current living situation,

---

[5] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

and a treatment plan). Therefore, based on the regulatory definition, Dr. Azzouqah did not issue an "opinion" that the ALJ is required to evaluate as such.

Second, to the extent Dr. Azzouqah's findings are medical evidence the ALJ was required to consider, the ALJ did so. He notes that

> Upon rheumatologic examination in October 2019, the claimant had diffuse joint and muscle pain without clear inflammatory arthritis (Exhibit 16F2). He had a negative rheumatoid factor, negative CCP, nonspecific ANA, normal ESR, and high SCRP, and he was diagnosed with generalized joint and multifactorial muscle pain (Exhibit 16F2). Upon rheumatologic follow up examination in December 2019, he reported his symptoms were overall stable (Exhibit 16F3). He reported falling 3 times, he used a wheelchair, and he was able to walk with a cane or walker at home (Exhibit 16F3). He had diffuse tenderness throughout his body, but no synovitis, and specific tender points were not noted (Exhibit 16F6). He was diagnosed with multiple joint pain and fibromyalgia (Exhibit 16F8).

AR 93. The ALJ took the fibromyalgia diagnosis into consideration as one of Plaintiff's severe impairments (AR 88) and also discussed Plaintiff's pain more generally by stating, "It is the undersigned's conclusion that the pain experienced by the claimant is limiting, but when compared with the total evidence, not severe enough to preclude all types of work." AR 92. Even when discussing Dr. Kwok's opinion, the ALJ takes care to note, "Dr. Kwok's opinion was supported by his explanation and was consistent with the generally normal physical examinations discussed above, and the undersigned finds that opinion persuasive; however, the undersigned also considered the claimant's subjective complaints of pain." AR 95. The ALJ did not fail to consider this evidence.

Relatedly, Plaintiff argues that Dr. Kwok lacked expertise in fibromyalgia. *See* Doc. 27 at 20. Specialization is a factor the ALJ must consider. 20 C.F.R. § 404.1520c(c)(4). However, the ALJ is not required to *explain how* the ALJ considered this factor and this factor is not the most important factor the ALJ must consider. 20 C.F.R. § 404.1520c(b)(2). The ALJ's discussion demonstrates that he considered the more important factors of supportability and consistency,

and the record contains no indication that Dr. Kwok is not qualified to make the medical opinions which the Plaintiff challenges.

Plaintiff further argues that the ALJ should have deferred to Dr. Azzouqah's findings because fibromyalgia is subjective and Dr. Kwok stated there was a lack of objective support for Plaintiff's allegations. Doc. 27 at 20-21. The Court disagrees with the stance that objective evidence can play no role in evaluating fibromyalgia symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003), for the proposition that the physical limitations resulting from fibromyalgia may lend themselves to objective analysis); *Newbold v. Colvin*, 718 F.3d 1257, 1267-68 (10th Cir. 2013) (affirming ALJ's evaluation of fibromyalgia where the claimant "has had no persistent neural deficits, she has required no narcotic pain medication for her body aches, she has used only over-the-counter pain medication for her severe migraine headaches, she has experienced no medication side effects, she has required no hospitalizations, she has undergone no physical therapy, she uses no assistive devices to ambulate and she has undergone no mental health treatment" and for fourteen months, the claimant "did not receive treatment from Dr. McMillan, the physician primarily responsible for managing her fibromyalgia"); *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (affirming where the claimant had full range of motion in her joints, had normal strength, walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with medication, and on her doctors' recommendations, stayed active with friends and family); *Romero v. Colvin*, 563 F. App'x 618, 621-22 (10th Cir. 2014) (affirming based on the claimant's daily activities and her statements that she experienced relief from medication and exercise as prescribed by her doctor); *Trujillo v. Commissioner, SSA*, 818 F. App'x 835, 843-44 (10th Cir. 2020) (an ALJ may credit a

diagnosis of fibromyalgia but must still ensure there is sufficient objective evidence to support a finding that the impairment "so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity"; ALJ may consider the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia). The Court therefore rejects Plaintiff's argument to the extent it implies that the ALJ erred in relying on objective evidence when discussing Plaintiff's limitations.

## II.     Importance of In-Person Physician Examination

Plaintiff's second argument is that Dr. Kwok never saw Plaintiff in person—not even at the hearing, which was telephonic—but he opined that Plaintiff did not medically require a wheelchair. Meanwhile, Plaintiff's treating physicians *did* see him in person and none of them found that the wheelchair, walker, or other assistive devices were unnecessary or that Plaintiff was malingering. Doc. 27 at 21. He therefore argues that the ALJ's failure to consider the treating relationship in weighing Dr. Kwok's opinion against this other evidence was error. Doc. 41 at 3. Defendant argues that no regulation places a heightened burden on the ALJ to consider treating physician findings when there is a telephonic hearing. Doc. 31 at 9. Defendant also points out that Dr. Kwok examined the evidence and found no record of a treating physician finding the wheelchair medically necessary; rather, Plaintiff requested and received a prescription for a wheelchair after a normal physical examination. *Id.* at 10. As a result, the ALJ's conclusion that the wheelchair was not medically necessary had the support of substantial evidence. *Id.*

The fact that Dr. Kwok was not a treating physician and never saw Plaintiff in person is one consideration among many that the ALJ must weigh in determining the persuasive value of Dr. Kwok's opinion. 20 C.F.R. § 404.1520c(c)(3) (length, extent, and purpose of treatment

9

relationship are all relevant considerations). But the ALJ's decision not to discuss this factor explicitly, as above, is not determinative. *Id.* § 404.1520c(b)(2). Dr. Kwok's determination was based on a review of the medical evidence, and the ALJ found it sufficiently persuasive to rely on in making a finding about Plaintiff's ability to walk, particularly because Dr. Kwok is an orthopedic specialist who has spent his career in orthopedic surgery. *See* AR 95.

The ALJ also did not ignore the observations of Plaintiff's treating physicians as documented in the medical record. The ALJ documented thoroughly that Plaintiff's physicians examined his spine, gait, balance, pain, and tenderness. *See* AR 93 (outlining physician observations from August 2019 through March 2020). These records make clear that Plaintiff can stand and walk, at least to some extent; he is not paralyzed. So, although Plaintiff's doctor presumably would not prescribe a wheelchair unless it was at least necessary on occasion, Doc. 27 at 21, a wheelchair prescription does not mean that he needs the wheelchair all the time, and the ALJ was entitled to determine exactly what his mobility limitations entailed. The ALJ examined the evidence, assigned significant weight to Dr. Kwok's opinion due to his specialty in orthopedic surgery, took into consideration Plaintiff's subjective complaints of pain, and found that Plaintiff could stand or walk for up to two hours in an eight-hour day. AR 90, 95. This finding was supported by substantial evidence. AR 24-25. Plaintiff's argument amounts to a request to reweigh the evidence the ALJ has already considered, which the Court cannot do.

### III.     Plaintiff's Treatment Regimen and Daily Activities

Finally, Plaintiff argues that the ALJ failed to consider his extensive efforts to manage his symptoms and his ability to perform daily activities in the context of his fibromyalgia diagnosis. Plaintiff points out that the ALJ only discusses his ability to perform daily activities at Step Two, not during Step Four, and that it is therefore impossible to know how or to what extent the ALJ

factored these limitations into the RFC analysis. Doc. 27 at 22 (referring to difficulties with personal care and extensive surgeries and therapies to manage symptoms). Defendant responds that by including this information in Step Two, the ALJ did consider these activities, and other information in the record indicates a greater ability to care for himself than Plaintiff describes in his function report. Doc. 31 at 10-11; *see also* AR 290-97 (function report).

As an initial matter, the ALJ *did* recognize the "great lengths" to which Plaintiff went for symptom management. Doc. 27 at 22. The ALJ notes Plaintiff's lumbar fusion surgery (AR 92) and injections (AR 92-93) as well as "a history of pain throughout his body" (AR 92). The ALJ also mentions that Plaintiff underwent physical and occupational therapy. AR 92. Plaintiff does not indicate where the record documented that the physical and occupational therapy themselves were painful, but either way, it is clear that the ALJ considered the extent of Plaintiff's treatment regimen.

At Step Four, the ALJ discussed Plaintiff's pain, his "difficulty picking up objects," and his testimony that he "can stand for 5-10 minutes, walk ½ block, and sit for 10 minutes." AR 91. Although he did not explicitly discuss some of the limitations Plaintiff highlights here—Plaintiff's stated difficulties with personal care and driving—Plaintiff does not explain how those difficulties would result in different limitations in the RFC. The work the ALJ identified Plaintiff as being able to perform did not include work that requires driving. AR 95. Similarly, Plaintiff does not explain how the difficulties he has with personal care would affect the work the ALJ determined he could perform. Moreover, the ALJ need not discuss every piece of evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). That the ALJ considered Plaintiff's self-described limitations is evident through the ALJ's citation to Plaintiff's testimony.

11

AR 91. That the ALJ did not explicitly reference each and every difficulty Plaintiff reported he has in taking care of himself is not error.

Plaintiff cites to another case the undersigned considered recently, *Jonathan W. v. Kijakazi*, No. 20cv1313 JHC/SCY (Proposed Findings and Recommended Disposition), *recommendation adopted* August 18, 2022 (Doc. 32). That case dealt with an instance in which the ALJ failed to consider a specific limitation—the inability to wear slacks and closed-toed shoes due to fibromyalgia—which the plaintiff discussed in his testimony and which the vocational expert admitted would prevent the plaintiff from doing the jobs the vocational expert had proposed. In other words, the *Jonathan W.* claimant demonstrated that the evidence was not cumulative of symptoms the ALJ did discuss and demonstrated how it would have resulted in limitations greater than that found in the RFC. In contrast, the present case does not involve a specific, non-cumulative limitation that could prevent Plaintiff from performing the ALJ's proposed work; rather, Plaintiff here seeks to reweigh evidence the ALJ has already taken into consideration.

For these reasons, the Court DENIES Plaintiff's motion and affirms the decision below.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE